# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronnie Harvell,<br><br>　　　　　Petitioner,<br><br>v.<br><br>Louis Winn,<br><br>　　　　　Respondent. | No. CV-12-00751-TUC-RCC (CRP)<br><br>**REPORT & RECOMMENDATION** |

Petitioner Ronnie Harvell, who is currently an inmate at the Federal Correctional Institution in Terre Haute, Indiana,[1] (*see* Doc. 17), has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) challenging the denial of his parole. Respondent has filed a Return and Answer (Doc. 16) requesting that the Petition be dismissed. For the following reasons, the Magistrate Judge recommends that the District Court, after its independent review, dismiss and deny the Petition.

**BACKGROUND**

On July 13, 1994, the Superior Court of the District of Columbia ("D.C. Court") sentenced Harvell to a term of probation for simple assault. (Answer, p. 2 n. 2 (citing Exh. F, p. 4)). Thereafter, on April 25, 1995, the D.C. Court sentenced Harvell to an

---

[1] Because Harvell was incarcerated at the United States Penitentiary in Tucson, Arizona, when he filed his Petition, this Court retains jurisdiction to consider the Petition. *See Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990)("jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.") (citation omitted).

aggregate term of three to nine years in prison for burglary in the second degree and possession of cocaine. (Answer, p. 1 (citing Exh. A); *see also* Answer, p. 2 (citing Exh. B) (Harvell committed the burglary offense in 1994 and the drug offense in 1991)). The District of Columbia Board of Parole ("D.C. Board") paroled Harvell on October 29, 1997, with a full term date of April 23, 2003. (Response, p. 2 (citing Exh. C)).

On June 11, 1998, the D.C. Board issued a warrant charging Harvell with, *inter alia*, failure to obey all laws and failure to report arrest to probation officer. (Answer,, p. 2 (citing Exh. E) (the warrant was filed as a detainer because Harvell was in custody)). On November 6, 1998, the D.C. Court revoked Harvell's probation for simple assault and sentenced him to 180 days in jail. (Answer, p. 2 (citing Exh. G)). On February 25, 1999, the D.C. Court sentenced Harvell to consecutive terms of 5 to 15 years for burglary, first degree; 4 to 12 years for burglary, second degree; and 4 to12 months for violating the Bail Reform Act, along with a concurrent term of 180 days for domestic assault. (Answer, p. 2 (citing Exh. H)). In sum, the D.C. Court sentenced Harvell to an aggregate term of 28 years. (Answer, p. 2 (citing Exh. F, p. 5)).

In June 2009, Harvell appeared for a parole hearing. (*See* Answer, Exh. J). Parole was denied and a parole reconsideration hearing was scheduled 36 months later. (*See* Answer, Exh. M; Answer, Exh. J, p.5). Harvell challenges that decision.

Although Harvell's sentences were imposed by the D.C. Court, the U.S. Parole Commission ("Commission") made the parole determination in this case. That is because Congress, under the National Capitalization Revitalization and Self–Government Improvement Act of 1997 ("Revitalization Act"), has mandated that the federal Bureau of Prisons ("BOP") be responsible for the custody and care of felons sentenced to incarceration pursuant to the D.C. Code. *See* Pub.L.No. 105–33 § 11201, 111 Stat. 251 (1997) (codified at D.C. Code § 24-101). The Revitalization Act also transferred paroling authority from the D.C. Board to the U.S. Parole Commission ("Commission"). *Id.*

Between 1998 and 2000, the Commission adopted a revised version of the D.C.

parole regulations that had been in effect since 1987 ("the 2000 Commission Guidelines"). *See Ellis v. District of Columbia,* 84 F.3d 1413 (D.C. Cir. 1996); *Sellmon v. Reilly,* 551 F.Supp.2d 66 (D.D.C. 2008). However, due to subsequent litigation raising *ex post facto* concerns, the Commission promulgated a rule that application of the 1987 D.C. Board Guidelines ("the 1987 D.C. Guidelines") applied to any offender who committed his crime between March 4, 1985 (the effective date of the 1987 D.C. Guidelines), and August 4, 1998 (the last day the D.C. Board exercised parole release authority) ("*Sellmon* Rule"). *See* 74 Fed.Reg. 34688 (July 17, 2009) (interim rule, effective August 17, 2009) and 28 C.F.R. § 2.80(o) (November 13, 2009) (final rule); (*see also* Answer, p. 3 n.3).

Additionally, in 1991, the Board published a "policy guideline" (not a codified regulation) which contained further guidance on the definitions of terms found in the 1987 guidelines. This 1991 Policy Guideline remained in effect from the date it was issued on December 16, 1991, until October 23, 1995, when the Board issued new policy guidelines. Because Harvell committed his burglary offense during this period, the Commission applied the 1991 Policy Guideline to his case. (Answer, p. 3 n. 3).

On June 18, 2009, the Commission conducted Harvell's initial parole hearing under the Commission's 2000 Guidelines. (Answer, p. 3 & Exh. J). However, thereafter, the Executive Reviewer reevaluated Harvell's case pursuant to the 1987 D.C. Guidelines.[2] (Answer, Exh. J, p. 4). The Executive Reviewer first computed Harvell's

---

[2] The 1987 D.C. Guidelines require calculation of a Total Point Score based on the inmate's "Salient Factor Score" which takes into account six pre-incarceration factors: (1) prior convictions and adjudications; (2) prior commitments of more than 30 days; (3) age at the commission of current offense; (4) recent commitment-free period; (5) status of prisoner at time of current offense; and (6) history of heroin or opiate dependence. *Sellmon,* 551 F.Supp. 2d at 70. After calculation of the Salient Factor Score, other pre-incarceration and post-incarceration factors, including "negative institutional behavior", are taken into account to arrive at the Point Assignment Grid Score, also referred to as the Total Point Score. *Sellmon,* 551 F.Supp. 2d at 70-71. At bottom, the Point Assignment Grid Score indicated the risk level presented by each inmate. *See id.* If the Total Point Score was three or more at the initial hearing, parole would ordinarily be denied and the inmate would be continued for a rehearing. *Id.* at 71; *see also* Answer, p. 3 n. 3.

- 3 -

Salient Factor Score taking into account Harvell's prior convictions (1 point for three prior convictions), prior commitments (1 point for 1 prior commitment), age at the time of the offense (1 point for being 25 years old with less than 5 prior commitments), recent commitment-free periods (0 points), status at time of current offense (0 points), and opiate dependence (1 point for no history of opiate dependence). (*Id.*). Harvell's Salient Factor Score was determined to be 4 points, "using the factors for the computations of the salient factor score as outlined in the [1987] DC regulations." (*Id.*). Harvell's Salient Factor Score placed him in the "Moderate" risk group. *See Sellmon,* 551 F.Supp. 2d at 70. The Executive Reviewer continued with the calculation as follows:

> Using the point Assignment Grid for Initial Hearings, he would receive 2 points for the salient factor score. In Section 1, he would not receive a point for the current offense involving a felony in which he caused, attempted to cause or threatened to cause the death or serious bodily injury to another individual or possessed a weapon. In section 2, he would receive a point for negative institutional adjustment since he received 6 countable infractions within 3 years of the parole eligibility date. Harvel[l] had one-Class I report for Assault, three-Class II reports for fighting, one-Class II report for assault (did not qualify under definitions for Class I) and one-Class II report for threatening bodily harm. He received the last report in February 2009. In section 3, the score would not be reduced for sustained program achievement. Harvell had not participated in programs. The total grid score for the initial hearing is 3. The DC regulations state that for a grid score of 3, parole should be denied and a rehearing scheduled within 12 months.

(Answer, Exh. J, p. 4).

Although the 1987 D.C. Guidelines generally provide for a reconsideration hearing in 12 months for an inmate with Harvell's total point score, the Executive Reviewer noted that the Guidelines allow for a departure:

> Based on the date of the offense, the regulations allow for the addition of 1 point to the grid score for negative institutional [sic] that occurred 3 years prior to the parole eligibility date. As a result, the misconduct reports he received prior to January 9, 2005 were not considered. In addition, the point would have been added to the score for the Class I assault. The additional 5 reports were not a factor in the receipt of the point. Prior to the three-year cut-off, Harvell had 26 misconduct reports since he was

- 4 -

>  transferred to the BOP in October 2000.  There is no information as to his conduct while in DOC custody.  Of the 26 reports, 5 were assault, 4 were threats, 5 were for fighting, and 4 were for refusing an order.  The remainder were all Class II reports, but minor in nature.  It should be noted that 4 months prior to the hearing, he received a misconduct report for assault.  The Commission does not have copies of the misconduct reports or DHOs.  The examiner discussed the infractions with him at the hearing and the summary indicates he admitted the violations.  The reviewer's assessment of the class levels was based on the available information.
>
>  The DC regulations allow for a departure based on repeated or serious disciplinary infractions and the need for programming.  Although Harvell needs programs to remain crime-free, he has mental health issues that have precluded him from program participation.  Since his move to Coleman, he has been medication compliant and has improved.  Since he has improved, he may be able to participate in the programs prior to his next hearing.  Harvell stated that his offenses in the community were committed primarily to support his drug abuse.  It is recommended that the Commission depart from the 12-month rehearing guideline to the 36 months recommended by the examiner.

(*Id.*).

The Commission, which stated in its Notice of Action that it was "applying the [1987] D.C. Guidelines", essentially adopted the Executive Reviewer's calculations. (Answer, Exh. M; *see also* Answer, Exh. J, p. 5)  The Commission found Harvell's Salient Factor Score was 4 and grid score was 3, and that under the Guidelines, parole should be denied for a grid score of 3.  (Answer, Exh. M; *see also* Answer, Exh. J, p.5). Consistent with the Executive Reviewer's recommendation, the Commission went on to

>  depart[] from the rehearing guidelines due to your history of repeated serious negative institutional behavior.  Since your transfer to the BOP in October 2000, you have received 26 disciplinary reports.  You have multiple reports for assault, fighting and making threats to others.  In addition, within 4 months of this hearing, you were found guilty of assault by the DHO.  These reports show the Commission that you are either unwilling or unable to control your behavior which makes you a serious risk when you are released to the community.
>
>  Prior to your reconsideration hearing, you should participate in the Challenge program or other similar programs such as anger and stress management.  In addition, you should continue to participate in counseling and remain medication complaint.  You should also maintain clear conduct.

1  (Answer, Exh. M; *see also* Answer, Exh. J, p. 5). The Commission scheduled a
2  reconsideration hearing in 36 months. (Answer, Exh. M).

**DISCUSSION**

Harvell raises two Grounds for relief. He first asserts that the Commission violated the Due Process Clause of the U.S. Constitution by miscalculating his Salient Factor Score and Total Grid Score. He contends that the Commission erroneously considered all of the disciplinary infractions he committed while in BOP custody, rather than only considering the infractions he committed within three years of his parole eligibility date. (Ground I). He also argues that the Commission should not have added a point to his Total Grid Score for negative institutional behavior because the BOP disciplinary hearing rules do not afford the right to have an attorney at disciplinary hearings and do not prove the right to file an appeal within three days of the receipt of the disciplinary hearing decision. (*Id.*).

In Ground II, Harvell asserts that the Commission violated the *Ex Post Facto* Clause of the U.S. Constitution by applying the Commissioner's 2000 Guidelines instead of the 1987 D.C. Guidelines to his case. (Ground II). He contends that the Commission failed to apply the 1991 Guideline that states that only infractions committed within three years of the parole eligibility date will be considered as negative institutional behavior. (Ground II).

Respondent argues that both of Harvell's claims fail.

**EX POST FACTO CLAIM.** The Court addresses Harvell's *Ex Post Facto* claim at the outset, because the determination of which regulations were applied by the Commission factor into resolution of both of his claims for relief.

The *Ex Post Facto* Clause of the U.S. Constitution prohibits "enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones,* 529 U.S. 244, 249 (2000). A retroactively applied parole regulation or guideline violates the *Ex Post Facto* Clause if it creates "a significant risk of increasing [the petitioner's] punishment." *Id.* at 255; *see also id.* at 251 (in the parole context, the

1   question is whether the law at issue "creates a significant risk of prolonging [petitioner's]
2   incarceration.")).

3       Harvell argues that the Commission applied the 2000 Guidelines, instead of the
4   1987 D.C. Guidelines, to deny him parole because he believes that parole would have
5   been granted under the 1987 D.C. Guidelines.  To support his argument, Petitioner relies
6   on the D.C. Board 1991 Policy Guideline, which applies to the 1987 D.C. Guidelines and
7   which provides that only infractions committed within three years of the parole eligibility
8   date should be considered as "negative institutional behavior."  (Petition, p. 4).  Harvell
9   claims that instead of following the 1991 Policy Guideline, the Commission "used 26
10  disciplinary reports that Petitioner had received since [his] transfer to the BOP in October
11  2000.  In addition, they also used a disciplinary infraction which happen[ed] within four
12  months of [his] parole hearing." (*Id.*).  He argues that he would have been granted parole
13  had the Commission used the proper guidelines. (*Id.*).

14      The 1991 Policy Guideline was promulgated "[t]o define criteria and parameters
15  for determining the applicability of descriptive terminology used in the [1987] Parole
16  Guidelines for release decisionmaking and to facilitate consistency in Guideline
17  application."  (Answer, Exh. P, p. 1).  The 1991 Policy Guideline explained, in pertinent,
18  part that "'Negative Institutional Behavior'" in initial parole consideration cases meant:
19  (1) one Class I Offense for murder, manslaughter, kidnapping, armed robbery, or first
20  degree burglary at any time during the minimum sentence; (2) one Class I Offense during
21  the twelve months preceding the hearing or during the last half of the minimum sentence
22  up to a period of three years, whichever is longer; or (3) two Class II Offenses during the
23  twelve months preceding the hearing or during the last half of the minimum sentence up
24  to a period of three years, whichever is longer. Answer, Exh. P.

25      The Hearing Summary reflects the Executive Reviewer's recommendation and
26  calculation under the 1987 D.C. Guidelines and the Commission's adoption of same.
27  (Answer, Exh. J, pp. 4-5).  The Executive Reviewer is clear that Harvell "would receive a
28  point for negative institutional adjustment since he received 6 countable infractions

1  *within 3 years of the parole eligibility date*", which included a Class I assault, three class
2  II reports for fighting, one Class II report for assault, and one Class II report for
3  threatening bodily harm." (Answer, p. 4 (emphasis added)).  Elsewhere in the Hearing
4  Summary, the Executive Reviewer pointed out that the point for negative institutional
5  adjustment "would have been added to the score for the Class I assault[]", alone.  (*Id.*).
6  The record is clear that the Commission applied the same grid score arrived at by the
7  Executive Reviewer.  (Answer, Exh. M; *see also* Answer, Exh. J, p. 5). In doing so, the
8  Commission stated that it was "applying the DC Board of Parole hearing guidelines to
9  [Harvell's] case." (Answer, Exh. M; *see also* Answer, Exh. J, p. 5).  Consistent with the
10 1987 D.C. Guidelines, the Commission denied parole because Harvell had a total grid
11 score of 3. (Answer, Exh. M; *see also* Answer, Exh. J, p. 5)

12 Harvell instead focuses on the Commission's reference to his 26 infractions
13 committed while in BOP custody.  However, the record is clear that the Commission did
14 not consider all 26 infractions in making the determination to deny parole. (*See* Answer,
15 Exh. M; Answer, Exh. J, p. 5).  Instead, the Commission only considered the 26
16 disciplinary reports for the Commission's departure from the rehearing guidelines in
17 scheduling a rehearing in 36 months rather than 12 months. (Answer, Exh. M; Answer
18 Exh. J, p. 5).

19 "Upon a denial of parole, the 1987 [D.C.] Guidelines specified that a rehearing
20 was 'ordinarily' to be scheduled within 'a set number of months depending on the type of
21 offense committed and the number of years remaining in the maximum sentence.'"
22 *Goodall v. Billingsley,* 2013 WL 3343658, *5 (S.D.N.Y. June 28, 2013) (citing *Brown v.*
23 *United States Parole Comm'n.,* 2003 WL 194206 *4 (S.D.N.Y. Jan 28, 2003) (citing
24 D.C. Mun. Regs. Tit 28 §§104.4-104.9 (1987))). However, the D.C. Board "could depart
25 from this recommendation and 'order a parole reconsideration date it determine[d] to be
26 appropriate.'" *Id.* (quoting *Brown,* 2003 WL 194206 at *4 (citing D.C. Mun. Regs. Tit.
27 28 §104.11)); *see also Sellmon v. Reilly,* 561 F.Supp.2d 46, 52 n.4 (D.D.C. 2008)
28 (*Sellmon II*) (recognizing that the D.C. Board has "more flexibility in setting rehearing

dates than it did in determining whether to grant or deny parole."); *Brown,* 2003 WL 194206 at 4 ("Thus, the regulations only suggest a time when a parole reconsideration hearing should take place and do not mandate that the rehearing be held in a certain number of months.").

Additionally, in April 1992, the Board adopted a Policy Guideline ("1992 Policy Guideline") addressing the establishment of parole reconsideration hearings. *Goodall,* 2013 WL 3343658 at *6; *see also* http://www.justice.gov/uspc/documents/parole-policy-guidelines.pdf at pp. 51-56 (text of 1992 Policy Guideline). The aim of the 1992 Policy Guideline was to "eliminate any interpretation that the Board is restricted to using the specific aggravating and mitigating factors listed" in the 1987 D.C. Guidelines with regard to scheduling parole reconsideration hearings. http://www.justice.gov/uspc/documents/parole-policy-guidelines.pdf at p. 51. "[T]he 1992 Policy [Guideline]…replaced the 1991 Policy [Guideline] to the extent it had addressed reconsideration hearings. *Goodall,* 2013 WL 3343658 at *6 (citing *Sellmon II, 561* F.Supp.2d at 52). Under the 1992 Guidelines, "the Board could, 'in its discretion,' schedule a rehearing date later than the date prescribed in the 1987 Guidelines." *Id.* (citing 1992 Policy Guideline at §VI(A)(2)). The 1992 Policy Guideline provided a non-exhaustive list of aggravating factors justifying scheduling a reconsideration hearing outside the prescribed time period, including that:  "[t]here has been repeated or extremely serious negative institutional behavior[]"; or  "[t]here has been opportunity but little/no effort made toward rehabilitation/preparation for remaining crime-free if returned to the community[]; or "[t]he offender poses a serious threat to self or others and adequate resources are not available in the community."  1992 Policy Guideline at §VI(A)(2)(g)-(i).  The 1992 Policy Guideline does not restrict the time period when considering "negative institutional behavior".  Under the 1992 Policy Guideline, the Board was required to specify each aggravating factor in support of a departure. *Id.* at §VII(A)(1).

In Harvell's case, the Executive Reviewer recommended departure from the

guidelines in setting a rehearing date "based on repeated or serious disciplinary infractions and the need for programming, "noting Harvell's multiple infractions since his 2000 transfer to BOP custody and the fact that until recently, his mental health issues had "precluded him from program participation." (Answer, Exh. J, p. 4). In its decision, the Commission stated it departed from rehearing guidelines "due to [Harvell's] history of repeated serious negative institutional behavior. Since your transfer to the BOP in October 2000, you have received 26 disciplinary reports. You have multiple reports for assault, fighting and making threats to others. In addition, within 4 months of this hearing, you were found guilty of assault by the DHO. These reports show the Commission that you are either unwilling or unable to control your behavior which makes you a serious risk when you are released to the community." (Answer, Exh. M). The Commission also indicated that "[p]rior to your reconsideration hearing, you should participate in the Challenger program or other similar programs such as anger and stress management. In addition, you should continue to participate in counseling and remain medication compliant. You should also maintain clear contact." (*Id.*).

"The decision to deny parole and the decision to postpone a reconsideration hearing are two distinct determinations" and "the obligation to schedule a reconsideration hearing is 'independent' of the decision to grant or deny parole…." *Goodall,* 2013 WL at 3343658 at *11 (internal quotation marks and citation omitted). As discussed above, under the 1992 Policy Guideline the Commission could, in its discretion, depart from the prescribed rehearing date. 1992 Policy Guideline, §VII(A)(2). *See also Sellmon II,* 561 F.Supp.2d at 52 n.4; *Goodall,* 2013 WL 3343658 at *3. The record reflects that the Commission complied with the Guidelines applicable to Harvell by specifying the reasons for its departure. Further, there is no showing on this record that the Commission considered factors that were inappropriate. *See Marshall v. Reilly,* 2014 WL 6066163, *3-*4 (M.D. Pa. Nov. 13, 2014) (holding there was no *ex post facto* violation where the Commission did not consider institutional infractions older than 3 years in computing petitioner's guidelines or as a reason for denial of parole; instead, the Commission relied

on infractions outside the 3-year period for setting a rehearing date of 36 months rather than 12 months.).

On the instant record, neither the Commission's decision denying parole, nor its decision to schedule a rehearing date of 36 months are in contravention of the regulations and Guidelines applicable to Harvell. Because the Commission in fact applied the 1987 D.C. Guidelines, and 1991 and 1992 Policy Guidelines, there is no violation of the *Ex Post Facto* Clause and the Court should grant Respondent's request to dismiss Petitioner's *Ex Post Facto* claim as moot. (*See Answer,* p. 9) (requesting dismissal as moot)).

**DUE PROCESS CLAIM**. To determine whether a due process violation has occurred, "[w]e first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed…were constitutionally sufficient." *Swarthout v. Cooke,* 562 U.S. 216, __, 131 S.Ct. 859, 861 (2011) (there is no right under the U.S. Constitution to parole). "In the parole context, a prisoner alleging a due process claim must demonstrate the existence of a protected liberty interest in parole, and the denial of one or more of the procedural protections that must be afforded when a prisoner has a liberty interest in parole.'" *Rogers v. Winn,* 2014 WL 1669099, *2 (D.Ariz. April 28, 2014) (quoting *Rosenkrantz v. Marshall*, 444 F.Supp.2d 1063, 1077 (C.D.Cal.2006)), *adopted,* 2014 WL 2585087 (D. Ariz. June 10, 2014) "A constitutionally protected liberty interest in parole will be found if the statutory scheme uses mandatory language that creates a presumption that parole will be granted if certain designated findings are made." *Rogers,* 2014 WL 1669099 at 3. In this case, any liberty interest in parole "must emanate from…District of Columbia law." *Ellis,* 84 F.3d 1413, 1420 (D.C.Cir. 1996).

Harvell cannot prevail on a due process claim because "[t]he D.C. parole scheme does not employ mandatory language[]", but instead only grants the parole board discretion to determine an inmate's eligibility for release. *Rogers,* 2014 WL 1669099 at *3 (citing *Ellis,* 84 F.3d at 1420); *see also Thomas v. Veach,* 501 F.3d 832, 836-37 ("the

1  District of Columbia's parole statute does not contain mandatory language creating an
2  expectancy of release that rises to the level of a constitutionally protected liberty interest.
3  Indeed, the law is well established that the D.C. statutory scheme does not create any
4  liberty interest in parole.") (citations omitted); *Goodall,* 2013 WL 3343658 at *12 (the
5  1987 D.C. Guidelines did not create a liberty interest in parole); *Hunter v. United States*
6  *Parole Comm'n.,* 2011 WL 4528469, *7 (M.D. Pa. Sept. 28, 2011) (same). "Because no
7  liberty interest is at stake, the [Commission] did not violate the due process clause in
8  denying [Harvell's] parole and extending his rehearing by 36 months." *Thomas,* 501
9  F.3d at 837.

10  Moreover, Harvell is mistaken when he argues that in denying parole, the
11  Commission considered all of the disciplinary infractions he committed while in BOP
12  custody.  As discussed above, in denying Harvell parole, the Commission only
13  considered the disciplinary infractions Harvell committed within three years of his parole
14  eligibility date, as allowed under the 1991 Policy Guideline. The Commission considered
15  infractions outside that period only when scheduling a reconsideration hearing. The
16  Commission may, in its discretion, postpone a reconsideration hearing and nothing in the
17  applicable guideline limits the Commission's consideration of negative institutional
18  behavior when scheduling a reconsideration hearing. *See Goodall,* 2013 WL at 3343658
19  at *11 ("the obligation to schedule a reconsideration hearing is 'independent' of the
20  decision to grant or deny parole….").

21  Nor can there be any due process violation because the BOP procedures governing
22  disciplinary hearings did not conform to the procedures employed by a D.C. prison. The
23  U.S. Supreme Court had held that for prison disciplinary proceedings to comport with the
24  demands of the Due Process Clause, the inmate must be afforded:  (1) written notice of
25  the disciplinary charges at least 24 hours in advance of the hearing; (2) a neutral and
26  detached hearing body; (3) an opportunity to present evidence and call witnesses; (4) an
27  opportunity to have non-attorney representation when the inmate is illiterate or the
28  disciplinary proceeding involves complex issues; and (5) a written statement provided by

1 the fact finder of the evidence relied upon and the reasons for the decision. *Wolff v. McDonnell,* 418 U.S. 539 (1974). Further, according to Respondent, BOP regulations also provide that an inmate is entitled to a staff representative at the disciplinary hearing and to a written copy of the decision. (Answer, p. 9 (citations omitted)); *see also* 28 C.F.R. §541, *et seq.* Harvell does not challenge the fact that each of the *Wolff* requirements was met and that he was afforded the rights provided under the BOP's regulations. "Since the procedures employed by BOP disciplinary proceedings fully satisfy due process requirements, reliance on the outcomes of those proceedings is fully justified by parole adjudicators."[3] *Hunter,* 2011 WL 4528469 at *7. *See also Rogers,* 2014 WL 1669099 at *2 (Commission's consideration of disciplinary infractions adjudicated under BOP regulations rather than under the old D.C. Department of Corrections regulations "did not violate due process…because there is no liberty interest in parole under D.C. law.").

Finally, although "[t]here is some authority for the proposition that exceptionally arbitrary governmental conduct may in itself violate the due process clause, whether or not a liberty or property interest is at stake", *Thomas,* 501 F.3d at 837, (internal quotation marks and citation omitted), the record reflects that the Commission complied with the guidelines applicable to Harvell and set forth rational reasons for its decision; thus, the Commission's decision was not arbitrary.

**CONCLUSION**

Because the Commission employed the appropriate guidelines in making its parole determination, Harvell's *Ex Post Facto* claim is moot. Moreover, Harvell is unable to show that his right to due process has been violated.

**RECOMMENDATION**

---

[3] The *Hunter* court also noted that under the Revitalization Act, D.C. inmates transferred to the BOP "'shall be subjected to any law or regulation applicable to person [sic] committed for violations of laws of the United States consistent with the sentence imposed.' *See* D.C. Code §24-101(a) and (b)….Thus, as the BOP was vested with the legal custody of the D.C. Code offenders, they too are subject to the disciplinary regulations of the BOP." *Hunter,* 2011 WL 4528469 at *7 n. 7.

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, dismiss and deny Harvell's Petition for Writ of Habeas Corpus (Doc. 1).

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within **FOURTEEN (14) DAYS** after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within **FOURTEEN (14) DAYS** after being served with a copy. Fed.R.Civ.P. 72(b)(2). No replies to objections shall be filed unless leave is granted from the District Court to do so. If objections are filed, the parties should use the following case number: **CV 12-751-TUC-RCC.**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to de novo review of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied*, 540 U.S. 900 (2003).

Dated this 30th day of January, 2015.

_____
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE